IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| DUSHAUNE EVANS, | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Civil Action No. 8:23-2238-AAQ |
| | * | |
| ANGGIE LHY VALDIVIEZO HURTADO, | * | |
| Defendant. | * | |
| | * | |

******

**MEMORANDUM OPINION AND ORDER**

This is a case arising out of a husband's claim that his former wife falsely accused him of assault. Pending before the Court is Plaintiff's Motion to Stay Proceedings. ECF No. 44. Although Plaintiff filed the Motion shortly before trial was set to commence, Defendant has failed to demonstrate that a brief delay of the trial would prejudice her, given the likelihood that the delay would obviate the need for a trial and the possibility of a verdict against her. For the foregoing reasons, as well as the reasons discussed below, Plaintiff's Motion shall be granted and the case shall be stayed for nine months.

**BACKGROUND**

Although this Opinion and Order briefly discusses Plaintiff's allegations against the Defendant, the majority of the Order focuses on the case's procedural history, which is particularly relevant to the pending Motion. According to his Complaint, Plaintiff, a United States Citizen,

1

and Defendant, an immigrant originally from Peru, met in February 2021.[1]  ECF No. 1, at 2. After a brief courtship, the two married on December 14, 2021.  *Id.*  At the time of their marriage, Plaintiff and Defendant did not reside in the same residence.  *Id.* at 3.  On April 14, 2022, Plaintiff agreed to sponsor Defendant's application for a green card by submitting a Petition for Alien Relative to United States Citizenship and Immigration Services ("USCIS").  *Id.*  In September of 2022, Defendant moved into Plaintiff's residence in Prince George's County, Maryland.  *Id.*

In October of 2022, things took a turn for the worse when after just five weeks of living together, Defendant moved out of their residence.  *Id.*  Plaintiff alleges that Defendant's uncle informed Plaintiff in November of 2022 that Defendant had moved in with an ex-boyfriend and that she intended on ending the marriage.  *Id.*  The basis for Defendant moving out of Plaintiff's residence forms the core dispute at the center of this case.  According to Plaintiff, Defendant moved out because she had entered into the marriage for the sole purpose of getting Plaintiff to sponsor her application for immigration benefits.  *See id.* at 3 (recounting Plaintiff's notification of USCIS that Defendant allegedly entered the marriage in bad faith); ECF No. 1-2 (Plaintiff's communications with USCIS).  Defendant, in turn, alleges that she moved out because Plaintiff sexually assaulted her.  *See* ECF No. 1, at 4 (recounting Defendant's Affidavit for Statement of Charges); ECF No. 11, at 3-4 (narrating Defendant's experiences while residing with Plaintiff).

Each party then took actions consistent with their understanding as to the basis for the dissolution of their marriage.  On December 1, 2022, Plaintiff sent a notice to USCIS expressing concern that Defendant had entered into their marriage in bad faith.  ECF No. 1, at 3.  On December 4, Plaintiff submitted a formal request that USCIS withdraw his sponsorship of

---

[1] The Court discusses the parties' immigration status because it is relevant to the dispute between the parties.

Defendant's application. *Id.* at 3-4. On December 21, 2022, Defendant presented an Affidavit for Statement of Charges to a Commissioner of the District Court of Maryland for Prince George's County accusing Plaintiff of drugging her, locking her in the basement of his house, sending her threatening messages, and forcing her to engage in sexual intercourse with him. *Id.* at 4.

As a result of Defendant's Affidavit, Prince George's County issued an arrest warrant for Plaintiff. *Id.* On January 14, 2023, Plaintiff was arrested, booked, fingerprinted, photographed, and detained at the Prince George's County Detention Center in Upper Marlboro, Maryland. *Id.* at 5. Prince George's County detained Plaintiff for the next five days. *Id.* On January 21, 2023, Prince George's County released Plaintiff on house arrest, *id.*; but, according to Plaintiff, the damage had already been done. In addition to the infringement on his liberty, Plaintiff subsequently lost his security clearance and employment. *Id.* On March 16, 2023, Prince George's County dropped all charges against Plaintiff. *Id.* at 6.

On August 16, 2023, Plaintiff filed the pending Complaint in this case, seeking redress from Defendant for malicious prosecution (Count I), intentional infliction of emotional distress (Count II), and fraud (Count III). *Id.* at 6-9. On September 28, 2023, the Clerk entered a Notice of Default after Defendant failed to Answer the Complaint in a timely manner. ECF No. 7. On October 27, 2023, Defendant filed an Answer; as a result, on December 4, 2023, the Court vacated the Clerk's prior Entry of Default. ECF Nos. 11, 14.

On December 4, 2023, the Court entered a Scheduling Order requiring the parties complete all discovery on or before April 17, 2024, and on that same date, provide the Court a Status Report regarding the case's progress. ECF No. 15, at 2. On December 21, 2023, the case was reassigned to the undersigned's chambers for all further proceedings. ECF No. 22.

On April 3, 2024, Defendant, who had been proceeding *pro se*, filed a letter with the Court seeking a three-month stay so that she could seek legal representation. ECF No. 31. On April 9, 2024, Plaintiff filed his response, joining Defendant's request for a stay on account of the following:

> [D]espite being informed of her Fifth Amendment right against self-incrimination—Defendant has made admissions that may have significant legal consequences to her under federal immigration laws. Based on these admissions, the undersigned believes it would be prudent and just to provide Defendant with a final opportunity to obtain legal counsel to represent her in this case. The entry of a 90-day stay, pursuant to Defendant's request, would provide Defendant with such an opportunity without causing undue prejudice to the Plaintiff[.]

ECF No. 32, at 3. Under the terms of the parties' agreed upon stay, the Court extended the deadline for completion of discovery until August 16, 2024 and the deadline for filing a Notice of Intent to File any Motion for Summary Judgment until August 30, 2024. ECF No. 33. At no point during the stay did counsel enter appearance on Defendant's behalf. Defendant continues to proceed *pro se* currently. On August 21, 2024, Plaintiff filed a Status Report stating that Plaintiff did not intend to file a dispositive motion and instead was prepared to proceed to trial. ECF No. 34.

On October 8, 2024, the Court held a Scheduling Conference, during which, after consulting with the parties regarding their schedules and availability, the Court required that: 1) all pre-trial filings be made on or before January 6, 2025; 2) the parties appear for a pre-trial conference on January 13, 2025; and 3) the parties proceed with a three-day trial beginning on January 27, 2025. ECF Nos. 35, 36. On January 6, 2025, Plaintiff submitted a Proposed Pre-Trial Order as the Court had directed; Defendant, in turn, failed to make any filings. ECF No. 37. According to Plaintiff:

> Plaintiff's counsel attempted to obtain Defendant's views on the items in this Proposed Pretrial order, as well as several other pretrial filings. Unfortunately, Defendant has not responded to the undersigned's correspondence, nor has the Defendant attempted to contact the undersigned since the last status hearing on October 8, 2024.

ECF No. 37, at 1 n. 1. At the Pre-Trial Conference, Defendant acknowledged that she had failed to make any filings as the Court had ordered. Nonetheless, the Court provided Defendant an extension of time to make the required filings by January 17, 2025, which Defendant ultimately did. *See* ECF No. 39. According to Plaintiff, Defendant had failed to produce several of her proposed exhibits during discovery; as a result, they could not be used during trial. These matters were further complicated by Defendant's stated position that she refused to communicate with Plaintiff's counsel going forward.

Additionally, at the Pre-Trial Conference, Defendant expressed concern that she did not believe that she would be able to proceed to trial without the appointment of an interpreter. Although Plaintiff's counsel offered to provide Defendant contact information for an interpreter service, Defendant refused any help, stating that although she believed she needed an interpreter to assist her, she refused to spend any resources of her own to employ one. This remained her position despite the fact that she intended to call witnesses who did not fully comprehend English.

On January 21, 2025, the Court held a Second Pre-Trial Conference in light of the outstanding question of whether Defendant would retain an interpreter and to address any remaining pre-trial issues in light of Defendant's delayed pre-trial filings. ECF No. 41. Importantly, at the Second Pre-Trial Conference, Plaintiff indicated that trial may not be necessary given his recent request for expungement from the Circuit Court of Maryland for Prince George's County. He elaborated further on this point in his subsequent Status Report and Motion to Stay:

> Plaintiff has a pending expungement petition before the Circuit Court for Prince George's County. Based on recent proceedings, Plaintiff anticipates either receiving a favorable judgment on the petition or becoming eligible for expungement when the three-year waiting period expires. . . . The practical relief Plaintiff seeks—vindication of his name through expungement of the wrongful charges—may be achieved through the state court expungement process rather than through monetary damages that may ultimately prove uncollectible given information regarding Defendant's apparent insolvency.

ECF No. 43, at 1. Defendant, during the Conference, stated that she opposed the Motion to Stay and preferred to proceed to trial given her strong desire to achieve a resolution of the matter, rather than wait an additional nine months to have her name cleared. Although Defendant initially waived the opportunity to provide a formal written response to Plaintiff's Motion, on January 29, 2025, Defendant provided such response additionally expressing concern regarding harassment from Plaintiff. *See* ECF No. 48, at 1.

## ANALYSIS

"When considering a motion to stay, the court takes into consideration economy of time and effort for the court, counsel, and litigants and weighs competing interests to maintain an even balance." *U.S. ex rel. Tusco, Inc. v. Clark Constr. Grp.*, 235 F.Supp.3d 745, 755 (D. Md. 2016) (internal citations and quotation marks omitted). In making this assessment, the Court must consider: 1) the potential prejudice to the non-moving party if the Court grants the Motion; 2) the hardship and inequity to the moving party if the action is not stayed; and 3) the judicial resources that the proposed stay would save. *Mitchell v. Lonza Walkersville, Inc.*, No. RDB–12–3787, 2013 WL 3776951, at *2 (D. Md. Jul. 17, 2013). The party seeking a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). The Supreme Court has explained that the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

6

counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). Accordingly, the decision whether to grant or deny a stay is committed to the discretion of the Court. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *see also McElmurry v. Alex C. Fergusson, Inc.*, No. WWD-04-389, 2006 WL 1875404, at *1 (M.D.N.C. Jul. 5, 2006) ("Trial courts have broad discretion in deciding whether to grant or deny a motion to continue/postpone trial."). Given the significant savings in judicial resources and for the moving party, as well as the lack of prejudice to Defendant, the Court shall grant Plaintiff's request to stay the case.

## I.     Lack of Prejudice

Defendant offers general, largely unsupported assertions of prejudice to oppose Plaintiff's request for a stay. In her Opposition,[2] Defendant asserts that were the Court to grant the requested stay, Plaintiff would use the nine-month period as an opportunity to "distort [her] evidence, [by] claiming that [she is] exaggerating or attempting to manipulate certain pieces of evidence." ECF No. 48, at 1. Additionally, Defendant alleges that there is a "possibility" that Plaintiff will attempt to "involve" her "in legal issues by prompting [her] to discuss the case outside of court." *Id.* Finally, Defendant alleges that Plaintiff will "disturb" her during the nine-month stay. *Id.*

Defendant's arguments suffer from several limitations. First, there is little or no evidence to support Defendant's allegations that Plaintiff will harass her, involve her in additional legal issues, or distort the evidence Defendant intends to use during the course of the stay. In support

---

[2] Defendant terms her Opposition as "Motion to Deny the 9-Month Extension." ECF No. 48, at 1. The characterization is understandable in light of her *pro se* status because she is seeking relief from the Court. However, given that she is responding to Plaintiff's preceding Motion to Stay, Defendant's filing is properly understood as an Opposition to the pending Motion.

of her Opposition, Defendant primarily relies on an undated text message which she alleges is from three or four days before she filed her Opposition, in which a woman, whom Defendant alleges has been in a romantic relationship with Plaintiff for five years, contacted Defendant and asked if Defendant needed assistance in dealing with Plaintiff.[3]   ECF No. 48-2; *see also* ECF No. 48, at 1 (referencing suspicious communications from Plaintiff's acquaintance).   Defendant's assertions are further undercut by the fact that she recently sought a three-month stay, to which Plaintiff consented, and which the Court granted.   ECF Nos. 31-33.   Defendant has not presented any evidence that her concerns came to pass during this period.   Moreover, Defendant's speculative concerns contrast with the types of concrete harm this Court has previously found sufficient to deny a request for a stay.   *Compare Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F.Supp.2d 481, 485 (D. Md. 2006) (denying request for a stay where the opposing party would have "to make the choice between: 1) continuing to operate as it has and potentially increasing its liability, or 2) changing its operations and potentially finding out that the labor and cost of changing was not necessary") *with GCE Gas Control Equip. v. 3B Med. Mfg. LLC*, No. TDC-22-2550, 2024 WL 217752, at *5 (D. Md. Jan. 18, 2024) (granting request for stay

---

[3] Although not explicitly discussed in Defendant's Opposition, Defendant attaches to her filing a series of undated text messages from Plaintiff as well as text messages to a third party whose relationship to the case Defendant leaves unexplained.  ECF No. 48-3.  The messages from Plaintiff appear to be screenshots of public websites listing Defendant's open criminal or civil cases, as well as a warning that Defendant will eventually be deported for her conduct.  *Id.* at 4-7.  The message chain with the third party consists almost entirely of messages from the Defendant to the third party complaining about Plaintiff.  *Id.* at 1-3.  Neither of these sets of messages justifies the denial of the requested stay.  As discussed above, a verdict in Defendant's favor would not prevent Plaintiff from continuing to send such messages going forward.  The Court, however, is sensitive to Defendant's concerns.  Accordingly, it recognizes Plaintiff's counsel's concession that Plaintiff will refrain from further communications with Defendant during the course of the stay.

where the Court could not find any evidence in the record supporting party's claims that it would be harmed by the requested stay).

Second, the proper remedy for Defendant's concerns is not a denial of the stay, but rather a request for a protective order. During the Second Pre-Trial Conference, Plaintiff's counsel represented to the Court that neither he, nor his client, will contact Defendant during the course of the stay. However, if this were to change, Defendant may request a protective order from the Court to obtain such relief.

Third, even if the case were to proceed to trial, there is no guarantee that Plaintiff would not attempt to contact Defendant or involve her in additional legal proceedings. Rather, if Plaintiff prevailed, it is likely that the parties would be involved in additional proceedings as Plaintiff attempted to collect any judgment. If Defendant prevailed, such an outcome could, to a degree, vindicate her, but it would not bar Plaintiff from all further contact with her—particularly of the type she presents in support of her allegations of prejudice.

Finally, fourth, although Defendant has expressed concern that Plaintiff will embroil her in further legal proceedings or prompt her to discuss the case outside of Court to her detriment, the available evidence suggests that Defendant is just as likely to be harmed from proceeding to trial immediately. Despite alleging that she needs an interpreter to fully participate in trial, and being informed on multiple occasions that she is not entitled to an interpreter in a civil proceeding without cost, she has refused to hire one. Additionally, Defendant has, on multiple occasions, disregarded the Court's Orders. Although the Court has granted extensions where necessary and appropriate in light of Defendant's *pro se* status, the likely continued disregard of the Court's Orders and related deadlines will ultimately work to Defendant's detriment. *See* ECF No. 31 (acknowledging that a professional lawyer would have helped Defendant "tremendously").

9

According to Plaintiff, Defendant has allegedly made multiple representations that may not only create legal liability, but may have collateral consequences for her ongoing immigration proceedings. ECF No. 32, at 3.

## II.     Hardship and Inequity from the Denial of a Stay

Second, the Court must consider whether the moving party has demonstrated good cause for the stay, or stated differently, the hardship they will bear if the Court denies their request. *Mitchell*, 2013 WL 3776951, at *2; Fed. R. Civ. P. 16(b)(4). Scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992) (*quoting Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D. Me. 1985)). Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson,* 975 F.2d at 610. As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.,* 795 F.2d 15, 18 (3rd Cir. 1986). Accordingly, "the focus of the inquiry is upon the moving party's reasons for seeking modification [of the order]." *Johnson,* 975 F.2d at 610.

Plaintiff has explained that were the Court to deny the stay, it is likely that he would have to expend resources that will ultimately prove unnecessary. According to Plaintiff, "on August 22, 2023, Plaintiff filed a Petition for Expungement in the Circuit Court for Prince George's County seeking to expunge all police and court records related to the false charges." ECF No. 44, at 1. Recently, the state court held a hearing on Plaintiff's Petition, and Plaintiff is hopeful that, as a result, he will receive a favorable ruling which will obviate the need for Plaintiff to proceed with this case. *Id.* Further, according to Plaintiff, even if the state court denies the Petition, at

the conclusion of the proposed nine-month stay period, the majority of time remaining before Plaintiff would become eligible for expungement as a matter of right would have passed; thus, eliminating the need for trial and the significant investment of resources it requires. *Id.* at 2. Defendant has failed to provide any response to these points. This factor also weighs in favor of granting the requested stay.

### III.   Judicial Resources

In assessing whether a stay conserves judicial resources, courts may consider the orderly course of justice measured "in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis,* 299 U.S. at 254–55)).

As with the other factors, this factor also supports Plaintiff's request for a stay. As explained above, after nine months have passed, it is likely that Plaintiff will seek dismissal of the case. In addition to the resources required to preside over any trial, given Defendant's disregard of the Court's previous Orders and deadlines, it is likely that this trial would be less efficient than others. For example, as explained above, despite the Court's Order directing Defendant to either consult with Plaintiff before jointly filing a proposed pre-trial order identifying any areas of disagreement, or file her own separate proposed pretrial order, Defendant did neither before the First Pre-Trial Conference. Recognizing her *pro se* status, the Court granted Defendant an extension to provide a list of exhibits and witnesses upon which she intended to rely. Defendant's ultimate list of exhibits included multiple documents which Plaintiff alleges Defendant failed to produce during discovery. Regardless of whether Plaintiff's representation is accurate, if the case proceeded to trial, the Court would have to devote significant resources to resolving this and other similar issues which are likely to arise. These and other similar matters would be further

complicated by Defendant's refusal to communicate with Plaintiff's counsel going forward or to express her position in his presence. *See* ECF No. 48, at 1 ("Last week, I attempted to express my concerns about the impact of this delay on the legal process. However, I chose not to speak openly in the presence of his attorney—not because I lack arguments, but because I do not wish to fuel the case or to feed him more with his ideas on how to continue threatening me.").

Finally, Defendant stated at the First Pre-Trial Conference that she intends to call multiple witnesses who only speak Spanish, but refuses to provide an interpreter to elicit their testimony. The Court has the authority appoint an interpreter for the limited purpose of receiving their testimony, but this would impose additional costs on the Court that, as Plaintiff has explained, will likely prove unnecessary at the conclusion of the stay.[4] *See* Fed. R. Civ. P. 43(d) (stating that when taking testimony: "[t]he court may appoint an interpreter of its choosing; fix reasonable compensation to be paid from funds provided by law or by one or more parties; and tax the compensation as costs.").

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Stay Proceedings in this case is granted. The case shall be stayed for nine months. Within fourteen days of the Circuit Court of Maryland for Prince George's County's decision on Plaintiff's Petition for Expungement, Plaintiff shall either file a Notice of Voluntary Dismissal or a Status Report addressing whether Plaintiff's Petition for Expungement was successful and whether trial remains necessary in light of Plaintiff's

---

[4] Although the Court may appoint an interpreter for the limited purpose of receiving testimony, a party is not entitled to an interpreter throughout a civil case unless the United States instituted the proceeding. *Rios v. Winners Auto Sale*, No. DKC 23-1140, 2024 WL 1833136, at *2 n.3 (D. Md. Apr. 26, 2024).

representations to the Court in his Motion to Stay.  If the state court has not ruled by October 21, 2025, Plaintiff shall file the Notice or Status Report on that date.

      Plaintiff's counsel has agreed that neither he nor his client will contact Defendant during the course of the stay.  To the extent that Plaintiff fails to comply with this commitment and Defendant has concrete evidence of harassment occurring during the course of the stay, she may seek a protective order from the Court, supported by such evidence, and the Court shall schedule a hearing on the matter promptly.

      So ordered.

Date:   February 19, 2025                                                           /s/
                                                                                Ajmel A. Quereshi
                                                                                United States Magistrate Judge